UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | BKY 13-40651-WJF |
| Top Hat 430, Inc., | Chapter 7 |
| Debtor. | |
| Randall L. Seaver, Trustee, | Adv. No. 15-04025-MER |
| Plaintiff, | |
| v. | |
| Pennie Glasser, | |
| Defendant. | |

## MEMORANDUM DECISION

At Minneapolis, Minnesota, September 27, 2016.

The matter pending before the Court involves an adversary proceeding brought by Randall L. Seaver, the chapter 7 trustee ("trustee"), against the defendant ("Ms. Glasser" or the "defendant"), in the form of an avoidance action to avoid and recover for the benefit of the bankruptcy estate, under 11 U.S.C. §§ 547(b) and 550, respectively, a transfer in the amount of $205,444.45, as well as to avoid, under MINN. STAT. § 513.45(b), made applicable by 11 U.S.C. § 544, and recover, under 11 U.S.C. § 550, transfers in the amount of $242,000.00. A trial was held on June 7, 2016. Appearances were as noted on the record: Chad A. Kelsch and Matthew D. Swanson for the trustee, and Thomas Flynn and Richard J. Reding for the defendant. The Court requested and received extensive post-trial briefs. The matter is ready for resolution.

This adversary action is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (H).  The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157.  This opinion constitutes the Court's findings of fact and conclusions of law under FED. R. BANKR. P. 7052.

**BACKGROUND: THE UNDISPUTED FACTS**

The vitality of this adversary centers on Ms. Glasser's relationship with the debtor, Top Hat 430, Inc. ("Top Hat 430" or the "debtor"), her former employer, and centers on her relationship with its principal, who is also her former spouse, David Pomije ("Mr. Pomije").  Ms. Glasser and Mr. Pomije's marriage lasted from December of 1985 through February of 1997.  Stip. Facts ¶ 3.  They have three children, two daughters and a son.  Id.  ¶¶ 4-6; see also Trial Tr. 99-100.[1]  During their marriage, Ms. Glasser worked at Protectronics, Inc., and Funco, Inc., two companies founded by Mr. Pomije.  Id.  ¶ 7.  After their marriage, she worked for other companies founded by Mr. Pomije, 2nd Swing, Inc., and, along with her son, Top Hat 430.  Id. ¶¶ 6, 7, and 13.

Top Hat 430 operated a jewelry business; the business had retail stores, through which it bought and sold new and used jewelry, precious metals, and gemstones.  Id. ¶ 1.  Top Hat 430 merged, as the surviving entity, on or about May 18, 2012, with a separate entity, Top Hat, Inc., a company founded in March of 2004 by Mr. Pomije and David Wermerskirchen.  Id. ¶¶ 1, 2.  In 2005, Ms. Glasser, and her present husband, Mr. Glasser, invested $96,000.00 in Top Hat, Inc. Id. ¶ 8; Ex. 6.  In March of 2011, around the time that Ms. Glasser worked for Top Hat 430,[2] Mr.

---

[1]   The parties stipulated to sharing two children; however, at trial, Mr. Pomije testified that he and Ms. Glasser have three children.

[2]   The parties stipulated to inconsistent facts concerning the time that Ms. Glasser worked for the debtor.  In paragraph six of the stipulated facts, the parties stipulated, "The Defendant and David Pomije's son worked for the debtor from approximately 2007 until shortly before the Debtor's bankruptcy filing in

Pomije approached Ms. Glasser and her husband, and sought a loan for Top Hat, Inc.  Id. ¶ 9. This loan would ultimately underpin the trustee's avoidance action.

The loan arose from a check, dated April 1, 2011, for $200,000.00 issued by Ms. Glasser to Top Hat, Inc.  Id. ¶ 10; Ex. 7.  Mr. Pomije, for Top Hat, Inc., on March 31, 2011, executed a promissory note in favor of the Glassers in the amount of $200,000.00.  Id.; Ex. 7.  The terms of the promissory note provided for repayment of the principal in 90 days, a $10,000.00 origination fee, as well as a 20% interest rate if default occurred.  Id. ¶ 11; Ex. 7.  Mr. Pomije also personally guaranteed the promissory note.  Id. ¶ 12; Ex. 8.  In addition to paying interest to the Glassers totaling $36,555.55, from the middle of 2011 through early 2012, Top Hat 430 transferred a check in the amount of $205,444.45 to the Glassers, on or about April 19, 2012.  Id. ¶¶ 17, 18.  Less than a year later, on February 12, 2013, Top Hat 430 filed for chapter 11 relief.[3]  Id. ¶ 19.

## ISSUE PRESENTED

- **Whether the trustee may avoid the transfer from the Debtor to the Defendant under 11 U.S.C. § 547(b), or avoid the transfers under MINN. STAT. § 513.45(b).**

- **Whether the Defendant qualifies as a non-statutory insider under either statute.**

## CERTAIN AVOIDANCE ACTIONS UNDER BANKRUPTCY LAW AND MINNESOTA LAW

### Bankruptcy Law: 11 U.S.C. § 547(b)

---

late 2012."  Stip. Facts ¶ 6.  But, in paragraph 13, the parties stipulated that, "[The] Defendant worked for the Debtor from early to mid 2011 through at least the summer of 2012."  Id. ¶ 13.

[3]     The debtor's chapter 11 case converted to one under chapter 7 on March 25, 2013.  See, Conversion of Case by Debtor,  In re Top Hat, 430, Inc., No. 13-40651 (Bankr. D. Minn. Mar. 25, 2013), ECF No. 22.

A trustee can avoid certain pre-petition preferential transfers for the bankruptcy estate by satisfying the elements of 11 U.S.C. § 547(b), and, if in play, by surviving a creditor's attempt to escape preference liability through the use of the exceptions in § 547(c).  This avoidance power held by the trustee "is intended to discourage creditors from racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy."  In re Armstrong, 291 F.3d 517, 525 (8th Cir. 2002) (citing Jones Truck Lines, Inc. v. Cent. States, Se. and Sw. Pension Fund (In re Jones Truck Lines, Inc.), 130 F.3d 323, 329 (8th Cir. 1997)).  "The concept of a preference is simple.  A trustee can avoid any transfer to a creditor within ninety days before the bankruptcy petition which places the creditor in a better position on the date of the bankruptcy petition than such creditor was in before such transfer was made."  In re Schwartz, 383 B.R. 119, 123 (B.A.P. 8th Cir. 2008) (citation omitted).

The trustee must prove each element of an 11 U.S.C. § 547(b) claim by a preponderance of the evidence.  Wells Fargo Home Mortg., Inc. v. Lindquist, 592 F.3d 838, 842 (8th Cir. 2010) (citing Stingley v. AlliedSignal, Inc. (In re Libby Int'l, Inc.), 247 B.R. 463, 466 (B.A.P. 8th Cir. 2000)).  To avoid a transfer as a preference, § 547(b) typically requires that:

> (1) there must be a transfer of an interest of the debtor in property; (2) on account of an antecedent debt; (3) to or for the benefit of a creditor; (4) made while the debtor was insolvent; (5) within 90 days prior to the commencement of the bankruptcy case; and (6) that left the creditor better off than it would have been if the transfer had not been made and the creditor asserted its claim in a Chapter 7 liquidation.

Id. (quoting  Buckley v. Jeld-Wen, Inc. (In re Interior Wood Prods. Co.), 986 F.2d 228, 230 (8th Cir. 1993)).

The trustee can avoid preferential transfers to those that occurred on "on or within 90 days before the date of the filing of the petition," unless the creditor is an insider.  11 U.S.C. §

4

547(b)(4). The 90-day "look back" period expands to a one-year period if the creditor is an insider. 11 U.S.C. § 547(b)(4)(B). For the trustee's preferential-transfer claim to succeed, Ms. Glasser needs to qualify as an insider to expand the "look back" period in order for the trustee to have his sights on a transfer that occurred more than 90 days but less than a year before Top Hat 430 filed for bankruptcy.

## MINN. STAT. § 513.45(b)

Likewise, whether Ms. Glasser is an insider makes or breaks the trustee's MINN. STAT. § 513.45(b) claim. Section 513.45(b) states:

> A transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made if the transfer was made to *an insider* for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

MINN. STAT. § 513.45(b) (emphasis added). Thus, unless Ms. Glasser is an insider, the trustee's cause of action under either 11 U.S.C. § 547(b) or MINN. STAT. § 513.45(b) collapses.

## CONSIDERED AN INSIDER? NO.

For the trustee here to succeed under either 11 U.S.C. § 547(b) or MINN. STAT. § 513.45(b), the defendant must qualify as an "insider." See In re Petters Co., 499 B.R. 342, 365 (Bankr. D. Minn. 2013) (consulting the Bankruptcy Code's definition of an insider is appropriate when applying the definition under Minnesota law). The term "insider" embraces more relationships than those enumerated in 11 U.S.C. § 101(31), and those insiders that fall beyond the literal letter of the law, but are captured within the spirit of the law, are called "non-statutory insiders." See In re Rosen Auto Leasing, Inc., 346 B.R. 798, 804 (B.A.P. 8th Cir. 2006) ("[T]he list is illustrative, not exclusive. 11 U.S.C. § 102(3)"). The illustrative list of *per se* insiders in 11 U.S.C. § 101(31) aids in determining whether an unlisted relationship qualifies as this type of

5

insider. See In re Longview Aluminum, L.L.C., 657 F.3d 507, 510 (7th Cir. 2011) ("When the position held by the alleged insider is not enumerated in the statute, the relevant inquiry for the court is to consider whether the relationship at issue is similar to or has characteristics of any of the defined relationships."); see also, In re Henderson, 96 B.R. 820, 825-86 (Bankr. E.D. Tenn. 1989). The legislative history behind the term "insider" also helps etch the contours of qualifying relationships: "An insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." H.R. No. 95-595, at 312 (1977); S. Rep. No. 95-989, at 25 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5810, 6269 (*quoted in* Matter of Newcomb, 744 F.2d 621, 625 n.4 (8th Cir. 1984)). Together, these ideas are nested in varying degrees in considerations used to determine whether an entity qualifies as a "non-statutory insider." This fact intensive and case-by-case undertaking places Ms. Glasser outside the opaque bounds of the term "insider." See In re A. Tarricone, Inc., 286 B.R. 256, 262-63 (Bankr. S.D.N.Y. 2002) (citations omitted) ("The analysis is a fact intensive one and must be done on a case-by-case basis.").

### CONTROL, CLOSENESS OF RELATIONSHIP, AND ARM'S LENGTH DEALING

The Bankruptcy Appellate Panel for the Eighth Circuit has identified the following considerations to determine whether one qualifies as a non-statutory insider:

> An insider is one who does not deal at *arm's length* with the debtor. Involvement in the day-to-day business of a debtor may elevate a creditor to insider status. However, the creditor would have to exert *control* over the debtor before gaining insider status. The ability of a creditor to compel payment of a debt is insufficient control to render the creditor an insider. In ascertaining insider status, the *closeness of the relationship* between the parties is also relevant.

In re Rosen Auto Leasing, Inc., 346 B.R. at 805 (citations omitted) (emphasis added) (relying heavily on Matter of Newcomb, 744 F.2d at 625 n.4). These factors can blend into one another.

See In re Oakwood Homes Corporation, 340 B.R. 510, 524 (Bankr. D. Del. 2006) ("At times, these three inquiries blend into one another.") (referencing the following three inquiries: (1) the closeness between the transferee and the debtor; (2) the degree of control or influence the transferee exerts over the debtor; and (3) whether the transactions were conducted at arm's length). The Court will analyze all these factors.

### CONTROL AND THE CLOSENESS OF RELATIONSHIP

To argue the requisite closeness between the defendant and the debtor, the trustee points to the defendant's status as a former spouse to the debtor's principal, her employment history with debtor's principal, and her history of investments with the debtor's principal. The trustee continues; he argues that the defendant's employment with the debtor and her receipt of payment for the debt supports a showing of closeness between the defendant and the debtor. These arguments, at their core, speak to the defendant's relationship with the debtor's principal, and her relationship to the debtor entity as an employee. Although unique, courts have previously grappled with these relationships, such as a former spouse and employee, in the context of an insider determination. Their guidance instructs this Court.

### THE DEFENDANT'S RELATIONSHIP WITH THE DEBTOR'S PRINCIPAL AS A FORMER SPOUSE

When examining a former spouse relationship, courts have developed more particularized considerations to determine whether a person or entity qualifies as an insider. Indeed, In re O'Neil emphasized that the "closeness of the relationship between the parties" is "particularly relevant when a trustee alleges that a former spouse is an insider." 550 B.R. 482, 517 (Bankr. D.N.D. 2016) (citing Hunter v. Dupuis (In re Dupuis), 265 B.R. 878, 885 (Bankr. N.D. Ohio 2001); Browning Interests v. Allison (In re Holloway), 955 F.2d 1008, 1012 (5th Cir. 1992)). "A

7

former spouse may also be a non-statutory insider where the former spouse is in a position to exercise some degree of control or influence over the debtor." Id. In determining the "closeness of the relationship between the parties," In re O'Neil espoused the factors in In re Dupius to help mark the distance in the relationship between former spouses, as well as to mark the former spouse's position of control or influence:[4]

> The length of the parties' marriage; the length of time between the termination of the marriage and the preferential transfer; whether the parties, after the termination of their marriage, maintain any sort of business relationship together; the extent to which the parties' divorce was adversarial in nature; whether the parties continued to live together and/or share living expenses; the time between the parties' physical separation and divorce; the extent to which the parties' marital assets and liabilities continue to be intertwined. In re Dupuis, 265 B.R. at 885.

Id. at 516-17. An application of the above factors in this case demonstrates the distance between the defendant and the debtor's principal for purposes of an insider determination.

Mr. Pomije and Ms. Glasser's marriage lasted between December of 1985 and February of 1997 – a bit more than twelve years. Stip. Facts ¶ 3. The couple separated two years before their divorce. Trial Tr. 121: 6-9. Nearly fifteen years after the end of their marriage, the transaction that the trustee seeks to avoid occurred on April 19, 2012. Stip. Facts ¶ 17. Ms. Glasser and Mr. Pomije shared three children, two daughters and son. Id. ¶ 4; see also Trial Tr.

---

[4] Before stating relevant considerations in an insider determination involving former spouses, the court in In re Dupuis, appears to intertwine a former spouse's ability to control within the considerations to determine the closeness of the relationship:

> In determining the closeness of the relationship, the essential question is the degree to which the transferee is able to exert control or influence over the debtor. Miller v. Schuman (In re Schuman), 81 B.R. 583, 586 (B.A.P. 9th Cir. 1987). In this respect, and in the circumstance where the alleged "insider" is a former spouse, the Court finds that when determining the closeness of the parties' relationship, the following considerations are relevant . . . .

In re Dupuis, 265 B.R. 878, 885 (Bankr. N.D. Ohio 2001).

8

99-100.  One of their daughters lived with Ms. Glasser on at least a part-time basis.  Stip.  Facts ¶ 5.  Their son worked for the debtor from approximately 2007 until shortly before the debtor filed for bankruptcy, February 12, 2013.  Id. ¶ 6.  After the termination of their marriage, Mr. Pomije and Ms. Glasser maintained different forms of business relationships.  In one form, Ms. Glasser worked, from approximately 2003 through 2004, as an employee of 2nd Swing, Inc., a company founded by Mr. Pomije.  Id. ¶ 7.  Thereafter, from approximately 2011 through 2012, she also worked as an employee of Top Hat 430.  Id. ¶ 13.  In another form, she was an investor of 2nd Swing, Inc, and Neuromics, Inc.  Trial. Tr. 80-81.  Apparently, she was never paid on the 2nd Swing, Inc. investment.  Id. 81.  She also invested, along with her current husband, Mr. Glasser, in Top Hat, Inc.  Stip. Facts ¶ 8; Ex. 6.  As to whether the parties' divorce was adversarial in nature, Ms. Glasser only testified that her relationship with Mr. Pomije at the time of the divorce was amicable.  Trial Tr. 121-22.  Lastly, under these factors, the record lacks any evidence showing whether the parties' marital assets and liabilities continue to be intertwined.  But see, Ex. 5 (divorce decree).

Though their lives have had connecting parts, the parties' post-divorce relationship has lacked the closeness contemplated by the term "insider," in light of the lack of control held, if at all, by Ms. Glasser, as Mr. Pomije's former wife.  For example, the promissory note executed on March 31, 2011, provided for repayment of the principal in 90 days.  Stip. Facts ¶ 11; Ex. 7.  The debtor, however, transferred $205,444.45 more than a year later.  Stip. Facts ¶ 17.  Mr. Martin, Top Hat 430's former CFO, testified that Mr. Pomije alone did not make decisions about who would get paid.  Trial Tr. 60.  But, Mr. Martin testified that "ultimately David [Pomije] made the decision on who we were going to be paying off, either vendors, creditors or bridge note

9

holders." Id. 35-36.  This point fails to show that Ms. Glasser held a position of control over Mr. Pomije *vis-à-vis* her status as a former spouse.  She simply was not paid under the terms of the promissory note, and Mr. Pomije was the one who had *de facto* control over that.  Indeed, she lacked control as evidenced by her stated reason for leaving Top Hat 430:  a disagreement between her and Mr. Pomije over their children.[5]  Id. 143.  Simply put, the parties lack a meaningful closeness for an insider relationship.  See In re Friedman, 126 B.R. 63, 70 (9th Cir. 1991) ("[N]ot every creditor-debtor relationship attended by a degree of personal interaction between the parties rises to the level of an insider relationship.").

### THE DEFENDANT'S RELATIONSHIP WITH THE DEBTOR AS AN EMPLOYEE

"In determining the closeness of the relationship, the essential question is the degree to which the transferee is able to exert control or influence over the debtor."  In re Dupuis, 265 B.R. at 885 (citing Miller v. Schuman (In re Schuman), 81 B.R. 583, 586 (B.A.P. 9th Cir. 1987)).  Here, to show that the defendant qualifies as a non-statutory insider, the trustee relies on the defendant's position as an employee of Top Hat 430.  Paramount in this consideration is the nature of control held by the defendant, especially in light of her employment with the debtor.  Although actual control for non-statutory insiders is not necessary,[6] some sort of control is relevant.[7]

---

[5]   In light of the circumstances surrounding the case, the Court took the parties' testimony with a grain of salt.  As such, the Court accorded the testimony its measured credit due.  Cf. United States v. Borger, 7 F. 193, 199 (C.C.S.D.N.Y. 1881) ("The credit due to testimony is to be measured, in part, by the interest or bias of the witness, which may sway him to pervert the truth, and by his manner and deportment in delivering his testimony; and a jury, in weighing testimony, have a right to consider the consistency of the different parts of a narration, and the possibility and probability, or impossibility or improbability, of the matters related.").

[6]   Courts have held that actual control is not necessary to qualify a transferee as a non-statutory insider.  See e.g., In re Winstar Commc'ns, Inc., 554 F.3d 382, 396 (3d Cir. 2009) (citing In re U.S. Medical, Inc., 531 F.3d 1272, 1279 (10th Cir. 2008)); see also In re Petters Co., Inc., 499 B.R. at 366 n.

10

One way to determine whether an employee qualifies as an insider is "to consider whether the relationship at issue is similar to or has characteristics of any of the defined relationships." In re Longview Aluminum, L.L.C., 657 F.3d at 510. In doing so, the court in In re Patriot Coal Corp., 492 B.R. 518, 535 (Bankr. E.D. Mo. 2013), synthesized factors to consider in determining whether an employee qualifies as an insider. This analysis focuses on the nature of control held by the employee with her employer:

> Whether an employee is an insider turns on the "degree of involvement in the debtor's affairs . . . the label an employer chooses to attach to a position is not dispositive for purposes of insider analysis." In re Global Aviation Holdings, 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012). An insider must "exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." In re Borders Group, Inc., 453 B.R. 459, 469 (Bankr. S.D.N.Y. 2011) (citing In re Babcock Dairy Co., 70 B.R. 657, 661 (Bankr. N.D. Ohio 1986)). "An individual's title, by itself, in insufficient to establish that an individual is a director or officer." Id. at 468-69 (citing In re Longview Aluminum, LLC, 419 B.R. 351, 355 (Bankr. N.D. Ill. 2009) ("[I]t is not simply the title 'director' or 'officer' that renders an individual an insider; rather it is the set of legal rights that a typical corporate director or officer holds.")).

In re Patriot Coal Corp., 492 B.R. at 535.

---

40 (approving Winstar Commc'ns' reasoning that requiring such a control to qualify as a non-statutory insider would render an enumerated insider, "person in control of the debtor" in § 101(31)(B)(iii), meaningless)).

7   To this point, the trustee argues that "the actual exercise of control over the debtor is not a requirement for the determination of insider status." The trustee then quotes, in part, In re Petters Co. Inc., "However, a showing of such 'control is not required' for non-statutory insider status." 499 B.R. at 366. By doing so, the trustee down plays the potential importance that control has in a non-statutory insider analysis. The "control" referred to in that sentence of In re Petters refers to actual control or its close equivalence. See id. at 366 n.40 ("Were a high degree of control required for non-statutory insider status, the option for statutory insider status as 'a person in control of the debtor,' § 101(31)(B)(iii), would render meaningless the nonexclusivity of the statutory enumeration.") (discussing Winstar Commc'ns, 554 F.3d at 396). Simply put, "Courts consider the 'closeness of the relationship' and whether the creditor has control over a debtor when determining whether a party is a non-statutory insider." In re Agriprocessors, Inc., 2013 WL 1332418, at *6 (Bankr. D. Iowa March 28, 2013) (citing In re Rosen Auto Leasing, Inc., 346 B.R. at 803)).

11

As an employee of the debtor, the record does not show that Ms. Glasser had authority over the debtor "as to unqualifiedly dictate corporate policy and the disposition of corporate assets." Id. Mr. Martin testified that Ms. Glasser, as an employee, would sort through jewelry. Trial Tr. 34-35. The trustee argues that, "she certainly had a pulse on its financial health vis-a-vis her close, personal relationship with Pomije, Sr. and Teresa Graf, Pomije, Sr.'s administrative assistant, and positioned herself accordingly so that she would receive preferential treatment on her loan."[8] Pl. Br. 15. This "stethoscope" of sorts hardly provides the means to exercise authority over the debtor. Therefore, based on the record, this analysis further shows that Ms. Glasser does not qualify as an insider.

### OTHER CONSIDERATIONS TO EXAMINE THE CLOSENESS OF A RELATIONSHIP

Generally speaking, courts have identified other considerations to examine the closeness of a relationship for an insider determination. One such court provides a useful framework for this particular inquiry:

> Considerations important to determining the closeness of the relationship between the creditor and debtor include whether the parties maintained "frequent" contact; testimony that demonstrated a close relationship; whether the parties had a personal friendship; whether the creditor had the ability to coerce the debtor to enter into transactions not in the debtor's interest; whether the parties shared the same office space; whether the creditor had actual control over the debtor; whether the parties were involved in a joint venture to share profits.

In re Moskowitz, 2011 WL 6176210, at *5 (Bankr. N.D. Ga. November 29, 2011) (citations omitted).

---

[8] To this point, Mr. Martin testified that Duane Wermerskirchen, one of the debtor's founders, was the vice-president of the debtor, and owned the building that the debtor leased. Trial Tr. 43-44. Based on the record, he was more poised to exert control over the debtor than Ms. Glasser. Yet, he was only partially paid on the loan that he extended to the debtor. Exs. 4 and 25. This further shows the lack of control held by Ms. Glasser here.

12

Although Ms. Glasser and Mr. Pomije maintained contacts, the evidence produced does not show "frequent" contacts. Even so, these contacts were not meaningful in the sense of the term "insider." At Top Hat 430, "She worked in the back office area sorting jewelry, doing other things related to the operation back there." Trial Tr. 34-35. Mr. Pomije had different duties as the principal of the debtor. There was scant evidence to show that Ms. Glasser and Mr. Pomije had a close relationship. Similarly, it is a stretch to state that the two had a personal friendship. Further, the record was devoid of any facts to show that Ms. Glasser could coerce the debtor into transactions that were not in the debtor's best interest. Mr. Pomije did not relinquish his control over the debtor to Ms. Glasser. In terms of office space, they worked in close proximity to each other, but performed entirely different functions. Ms. Glasser, along with her husband, invested in Top Hat, Inc.; this shows that the parities were involved in somewhat of a joint venture to share profits.

In sum, Ms. Glasser, in light of the factual considerations used to examine the closeness of a relationship for former spouses, employees, and, more broadly, other debtor-creditor relationships, lacks the requisite closeness and ability to control the debtor to be considered an "insider."

### LESS THAN AN ARM'S LENGTH TRANSACTION

In making an insider determination, many factors aid courts in examining whether an arm's length transaction occurred. These factors include: (1) whether the loan was unsecured; (2) whether the creditor inquired about the debtor's solvency or ability to repay; (3) whether the creditor had control or influence over the debtor; (4) whether there were restrictions on the debtor's use of the money; (5) whether evidence exists to show a desire to treat this creditor

13

differently from all other general unsecured creditors; (6) whether both parties received a benefit from the transaction; (7) the intent of the parties; and (8) whether there was an agreement for repayment, i.e., a note or other document to evidence the debt. In re Agriprocessors, Inc., 2013 WL 1332418, at *6 (citations omitted). Here, the dynamic between Ms. Glasser and the debtor, through her interaction with Mr. Pomije, places this transaction short of one that is arm's length.

First, the loan was an unsecured loan. Ex. 6. Second, credible testimony does not exist to show that the Glassers undertook any diligence to inquire about the debtor's solvency or ability to repay the loan. Trial Tr. 88:11-13. What weighs heavily here is, at trial, Ms. Glasser abruptly exclaimed that she made the loan, because of her relationship with Mr. Pomije. Id. 91:24-25 and 92:1-2. Third, as already noted, the creditor lacked control or influence over the debtor. Fourth, the promissory note placed no restrictions on the debtor's use of the money. Ex. 7. Fifth, evidence exists to show a desire to treat Ms. Glasser differently from all other general unsecured creditors, namely: the note required an origination fee, the interest rate was 20% on default, and Mr. Pomije's personal guaranty was required. See Exs. 7 and 8; cf. Exs. M, N, O, P, 26, 27, and 28. None of the other unsecured loans had these terms. Sixth, the intent of the parties in making this transaction appears to have been for business purposes. Seventh, both parties received benefits. The terms of Ms. Glasser's loan were satisfied, with interest payments. In turn, the debtor used the loan proceeds to continue to operate the business. As for the last factor, the promissory note contemplates the agreement for repayment. Ex. 7. Placing due weight where it is due, these factors show that the transaction at issue was conducted at less than arm's length.[9]

---

[9] Having said that, the absence of an arm's length transaction alone does not confer insider status. See In re Three Flint Hill Ltd. P'ship, 213 B.R. 292, 300 (D. Md. 1997) ("[I]t is clear that an

## CONCLUSION

The trustee failed to carry his burden of showing that Ms. Glasser was a non-statutory insider. Even though a less-than-arm's length transaction occurred, Ms. Glasser lacked any meaningful closeness with, or control over, the debtor. Therefore, the trustee's avoidance causes of action collapse; both fail as a matter of law.[10]

**ACCORDINGLY, IT IS ORDERED THAT:**

1. The pre-petition transfer of $205,444.45 to the defendant is not avoided as a preferential transfer under 11 U.S.C. § 547(b).

2. The pre-petition transfers in the amount of $242,000.00[11] to the defendant are not avoided as a fraudulent transfer under MINN. STAT. § 513.45(b), made applicable by 11 U.S.C. § 544.

3. The bankruptcy estate is not entitled to the pre-petition transfers under 11 U.S.C. § 550.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

NOTICE OF ELECTRONIC ENTRY AND FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *09/27/2016*
Lori Vosejpka, Clerk, by MJS

*/e/ Michael E. Ridgway*
Michael E. Ridgway
United States Bankruptcy Judge

---

arm's-length transaction between even close associates does not confer insider status[.]") (*cited in* In re U.S. Medical, Inc., 370 B.R. 340, 345 (B.A.P. 10th Cir. 2007)).

[10]   The parties dispute whether the debtor was insolvent under 11 U.S.C. § 547(b), and also dispute whether Ms. Glasser had reasonable cause to believe that the debtor was insolvent, under MINN. STAT. § 513.45. The doctrine of judicial restraint compels this Court to decide the least amount of issues required to resolve this dispute. See In re Loptaka, 400 B.R. 433, 440 (Bankr. M.D. Pa. 2009) ("The doctrine of judicial restraint suggests that a court should decide the fewest issues necessary to resolve the subject dispute.") (citing Morse v. Frederick, 551 U.S. 393, 431(2007); PDK Labs, Inc. v. U.S. Drug Enforcement Agency, 362 F.3d 786, 798, 799 (D.C. Cir. 2004)). Therefore, the Court need not decide either of those issues; the trustee's claims already fail as a matter of law.

[11]   The $242,000.00 sought to be avoided includes interest payments totaling $36,555.55, as well as a transfer in the amount of $205,444.45. See Stip. Facts ¶¶ 17, 18.